IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01738-MSK-MJW

ELIZABETH WOJDACZ,

Plaintiff(s),

v.

ROBERT E. BLACKBURN,
MICHAEL E. HEGARTY,
ERIC LAMPHERE,
KIM DELINE,
MICHAEL WATTS,
RUTHERFORD, MULLEN & MOORE,
LINDSEY TOPPER,
COLORADO SPRINGS CITY POLICE DEPARTMENT,
SGT. JOEL KERN,
W. LAMBERT,
LT. SCOTT WHITTINGTON,
MEDINA GENERAL HOSPITAL,
AKRON CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON,
ASHLAND COUNTY DEPARTMENT OF HUMAN SERVICES, and
CITY OF COLORADO SPRINGS, COLORADO,

Defendant(s).

**RECOMMENDATION ON**

**(1) DEFENDANTS ROBERT E. BLACKBURN AND MICHAEL E. HEGARTY'S
MOTION TO DISMISS CLAIMS IN AMENDED COMPLAINT (Docket No. 31);**

**(2) CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1); and 12(b)(6) (Docket No. 32);**

**(3) MOTION TO DISMISS OF DEFENDANT ASHLAND COUNTY DEPARTMENT OF
HUMAN SERVICES FOR LACK OF SUBJECT MATTER JURISDICTION, PERSONAL
JURISDICTION, AND IMPROPER VENUE (Docket No. 54);**

**(4) MOTION TO DISMISS BY DEFENDANTS KIMBERLY DELINE, MICHAEL WATTS,
AND RETHERFORD, MULLEN & MOORE, LLC (Docket No. 56);**

**(5) DEFENDANT AKRON CHILDREN'S HOSPITAL'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2) and 12(b)(3) (Docket No. 65);**

2

**(6) MOTION TO DISMISS BY LINDSEY TOPPER (Docket No. 90);**

**(7) MEDINA GENERAL HOSPITAL'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(3) and 12(b)(6) (Docket No. 97); and**

**(8) PLAINTIFF'S RULE 65 INJUNCTION FOR EX PARTE ORDERS (Docket No. 139)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by Chief Judge Marcia S. Krieger on September 4, 2013 (Docket No. 27).

**PLAINTIFF'S ALLEGATIONS**

The pro se plaintiff, Elizabeth Wojdacz, asserts the following in her Amended Complaint (Docket No. 22). Over nineteen years ago, on May 29, 1995, plaintiff and her minor son, Christopher, were detained at defendant Medina General Hospital ("Medina General") by hospital workers who refused to give them directions to defendant Akron Children's Hospital. While at Medina General, plaintiff was made to sign the following documents for Akron Children's Hospital without first being there: (1) an Agreements and Informen [sic] Consent, (2) an Authorization to Pay Third-Party Benefits Major Medical Assignment, Authorization to Contact Third-Party Payors and Utilization Management Entities, Agreement to Pay and Cooperate; and (3) an Application for Voluntary Admission for Akron Children's Medical Center. After plaintiff signed these three forms for Akron Children's Hospital, she was allowed to leave, and Medina General workers gave her directions to Akron Children's Hospital. Medina General refused to allow plaintiff to leave with Christopher, telling her that he had been admitted to Akron Children's Hospital and must now be transported there by ambulance.

3

Christopher thus went by ambulance, and plaintiff drove there.  When plaintiff arrived, she was placed on a locked ward and told to sit in a small room where a hospital worker gave her blank family session forms to sign.  Plaintiff refused to sign them because they indicated that there had already been family sessions with the doctors named thereon.  Plaintiff was told the information would be added after she signed them, but plaintiff refused, and the forms were taken from her by that hospital worker.  Plaintiff left Akron Children's Hospital, and she was not permitted to take Christopher.

When plaintiff arrived home, and for several days thereafter, she was contacted by Akron Children's Hospital workers.  At one point a hospital doctor told her that if she did not come into the hospital, they would file a report with Children's Services.  Plaintiff never returned to Akron Children's Hospital.

In a phone conversation, Christopher told plaintiff to contact Paul Lumadue at Children's Services, which she did.  Plaintiff told Lumadue that the papers for Christopher's admission to Akron Children's Hospital were signed under false circumstances and were not lawful.  Lumadue filed a complaint for custody without notifying plaintiff of a hearing where she then lost custody.  A doctor from Akron Children's Hospital had made the initial complaint to Paul Lumadue.  Plaintiff was never permitted visitation but secretly met with Christopher while he was in state custody.  Christopher told plaintiff that he cooperated with doctors and state officials in exchange to go to college.  Plaintiff and Christopher wrote down these facts and filed them with the court on June 12, 1996, in an effort to be given custody, but the court ignored them.  On January 3, 1997, plaintiff filed a complaint in the same court, claiming that Christopher was an endangered, delinquent, and neglected child and demanded

4

custody be returned to her.  It was never adjudicated.

On January 20, 1997, plaintiff was arrested by Ashland City Police for being mentally ill; they beat and injured her.  The plan to commit her involuntarily to a mental hospital failed, and she was falsely charged with crimes.

On or about December 9 to 14, 1997, Christopher was murdered in his dorm room.  The exact date of his death was never determined.  All persons involved in his death investigation covered up the murder and made a claim of suicide, which is included in his death certificate.  Plaintiff has maintained all murder evidence, which includes the clothes (with blood evidence) he was wearing when he was killed, photos taken by plaintiff of Christopher's body, and photos given to her by police that they had taken in his room when his body was discovered.  Plaintiff also has documentary evidence.

Plaintiff filed a wrongful death action in Wood County, Ohio.

In July 2000 plaintiff moved to Colorado Springs with her youngest son Sean. Shortly after this move, Sean cooperated with officers of defendant Colorado Springs Police Department ("CSPD") to enable them to remove him from plaintiff's custody, as his brother had done.  Department of Human Services and court involvement prevented plaintiff from seeing Sean since that time, and their relationship has never been the same.

In both custody cases, plaintiff was not permitted to have representation by counsel and/or counsel failed to represent her adequately.

Plaintiff dropped the wrongful death suit when Sean was taken for fear of his life.

On March 31, 2002, plaintiff gave Sgt. Clayton of the CSPD a file containing

RICO violations, including information and evidence of her son's murder.  Clayton has

since claimed he does not know what happened to that file.

Plaintiff contacted the CSPD trying to report multiple criminal acts by her

common law husband, Gary Norman, but police covered up his criminal acts each time.

In June 2012 plaintiff filed a RICO and civil rights action in this court, Civil Action

No. 12-cv-01483-REB-MEH.[1]  At no time was this case ever set for pretrial conference

or trial, contrary to the court rules.  The Clerk mailed to plaintiff at the wrong address the

order from the court to prepare the scheduling order and setting a scheduling

conference on August 22, 2012.  Plaintiff never received it, could not participate in the

formulation of the scheduling order, and was unable to attend the scheduling

conference.  At no time did defendant attorneys Lamphere, DeLine, or Watts contact

plaintiff to permit her to participate in the formulation of that scheduling order until after it

was submitted to the court.  On August 15, 2012, Watts mailed plaintiff a draft

scheduling order, and plaintiff was not permitted to participate in that order.  On October

24, 2012, DeLine filed a 19-page motion to dismiss and for judgment on the pleadings.

On November 27, 2012, Watts filed a 19-page motion to dismiss and for judgment on

the pleadings.  The court *sua sponte* struck both motions for failure to comply with

defendant Judge Blackburn's practice standards.  Watts failed to serve plaintiff with an

---

[1]The court takes judicial notice of the docket in Civil Action No. 12-cv-01483-
REB-MEH.  Final Judgment was entered in that case on May 15, 2014 (Docket No.
316).  The case was tried before a jury with Judge Blackburn presiding.  Immediately
subsequent to the completion of the plaintiff's case in chief, Judge Blackburn granted
defendants' motions for entry of judgment as a matter of law under Fed. R. Civ. P. 50
(b)(a)(1).  (Docket No. 316).  Judgment was thus entered in favor of defendants and
against plaintiff on all claims for relief.  (Docket No. 316).

6

answer to the amended complaint within the time prescribed and thereafter at some point after December 14, 2012, gave plaintiff a copy when she was in the office. On the 47th page of that document, plaintiff's address was incorrect. The court dismissed Watt's client after being advised by plaintiff of the default. On March 11, 2012, plaintiff noticed depositions for Gary Norman, Cliff Hudson, and Patrick Miller. In a Minute Order by defendant Judge Hegarty, all three depositions were stopped. When the depositions were finally permitted, Judge Hegarty coached Norman in his answers, forbid certain questions of Hudson, and refused to allow the deposition of Miller.

On April 22, 2013, defendant attorney Topper filed a verified response to a motion plaintiff never filed, knowing that his client was in default and the response had no standing. As a result, Judge Hegarty *sua sponte* struck the response, ruling that Topper could refile when plaintiff filed for the default, which plaintiff has not yet filed. Judge Hegarty also issued several orders due to scheduling and rescheduling requests from Lamphere, Watts, and DeLine which resulted in the discovery deadline expiring. At one point Judge Hegarty ordered the depositions to be scheduled, and in that document stated for the record that these depositions would conclude discovery. At another point Judge Hegarty ordered Watts, DeLine, and plaintiff to set weekly meetings to discuss the case and file weekly status reports with the court concerning those meetings. Plaintiff endured needless expense, her claims being thrown out, and parties being dismissed where motions misconstruing her claims and her rights to due process were ignored by Judge Hegarty, Lamphere, Watts, and DeLine and permitted by Judge Blackburn.

Where Watts, DeLine, and Lamphere could have filed appropriate motions and

received dismissals (or not) they instead engaged in multiple filings, rescheduled

matters several times, and in cooperation with Judge Hegarty, delayed and prevented

discovery in this case.  Judge Blackburn would have been aware and did nothing to

intervene.

In April 2013 plaintiff gave a CD ROM to the CSPD that contained evidence of

tax fraud, perjury, and other criminal acts performed by Norman and Hudson.  That CD

ROM was tampered with by the CSPD.  Plaintiff met with defendant CSPD Detective

Lambert who refused to investigate the matter after being provided with a second CD

ROM containing the information given to CSPD in April.  When plaintiff made several

more attempts to seek the filing criminal charges against Norman and Hudson,

defendant CSPD Sgt. Kern threatened to arrest plaintiff if she continued to try to meet

with the police chief concerning the officer's misconduct regarding the tampering with

evidence and the criminal violations of Norman and Hudson.  Plaintiff eventually met

with defendant CSPD Lt. Whittington to complain about Lambert and Kern, but

Whittington never contacted plaintiff to advise her of the outcome.

CSPD has established a practice and pattern where plaintiff is refused any and

all remedy through them with respect to filing criminal charges where she is a victim of

criminal acts and where her construction company was harmed as well.  As part of that

pattern and practice, non-party Brian Grady of the CSPD attempted to obtain plaintiff's

signature on a medical record release form to obtain plaintiff's mental health record

(none exists) to cover up the "child snatching" of Sean when plaintiff moved to Colorado

in July 2000.

CSPD refused to file criminal charges against Norman, and in exchange Norman

8

would assist CSPD to have plaintiff committed to mental health evaluations and possible commitment in order to tamper with her testimony regarding Christopher's murder in Ohio and her testimony in CSPD's child snatching of Sean in Colorado.

On December 23, 2012, an attempt was made to kill plaintiff when her truck was set on fire while she slept.  The El Paso County Sheriff never discovered who set the fires (three fires were set; the first two went out).

All defendants engaged in violations the Racketeer Influenced and Corrupt Organizations Act ("RICO") chapter of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961-1968, as well as violations of other crimes against plaintiff and her children and violations of plaintiff's constitutional rights.  The first qui tam acts were performed in Ohio in 1995 to 1997 when Medina General, Akron Children's Hospital, and defendant Ashland County Department of Human Services ("ACDHS") gained Christopher's cooperation to create false medical records in order to bill the federal government for medical care and foster care that was not necessary in violation of various criminal statutes, i.e., 18 U.S.C. §§ 1002, 1035, 1117, 1111, 242, 241, 1341, 1503.  Medina General and ACDHS violated plaintiff's First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights by conspiring to engage in these qui tam acts in violation of the Federal False Claims Act ("FFCA"), 31 U.S.C. §§ 3729 to 3722.

CSPD, defendant City of Colorado Springs ("CCS"), and persons unknown to plaintiff engaged in qui tam acts when they conspired to grab custody of Sean shortly after plaintiff moved to Colorado where he was placed into foster care, paid for with federal funds from approximately 2000 to 2001 in violation of 18 U.S.C. §§ 1002, 242, 1341, 1503, 1961, where Sean cooperated with those defendants who sole away his

custody from plaintiff.  They violated plaintiff's First, Fourth, Fifth, Eighth, Ninth, and

Fourteenth Amendment rights by conspiring to engage in these qui tam acts in violation

of the FFCA.  CSPD and CCS also violated 18 U.S.C. §§ 1512, 1513, 1503, and 3 by

grabbing Sean, plaintiff did drop her wrongful death suit for Christopher in Ohio.

CSPD, CCS, Kern, Lambert, Whittington, and officers unknown violated 18 U.S.C. §§ 3,

1512, 1513, 1503, 242, 241, and 1341 by refusing to investigate criminal acts by

Norman and Hudson in exchange for Norman's assistance to tamper with plaintiff's

testimony regarding multiple criminal acts in Ohio and Colorado.

Judge Blackburn, Judge Hegarty, Lamphere, DeLine, Watts, Topper, and the

clerks of court in Civil Action No. 12-cv-01483-REB-MEH violated plaintiff's civil rights of

due process by engaging in RICO acts, not limited to violations of 18 U.S.C. §§ 242,

241, 1341, 1503.  Judge Blackburn and Judge Hegarty permitted Watts, DeLine, and

Topper to file unnecessary documents in the case to increase plaintiff's litigation costs

and to permit them to bill their clients after gaining dismissals for their clients.  Judge

Blackburn and Judge Hegarty failed to schedule a pretrial conference or trial, and

neither followed statutory procedure which affected plaintiff's due process rights.

Although jurisdiction was lost, both Judge Blackburn and Judge Hegarty continued to

preside in that case.  After jurisdiction was lost, Judge Blackburn, Judge Hegarty,

Lamphere, DeLine, and Watts engaged in a massive fraud upon the court to prevent

plaintiff from participation in the formation of the scheduling order which resulted in

limiting her issues.  They also conspired to violate her constitutional rights.  Both Judge

Blackburn and Judge Hegarty violated plaintiff's constitutional rights under 42 U.S.C. §

1985(3); although that allegation was pled in the other civil action, it was ignored by the

10

court.  Both Judge Blackburn and Judge Hegarty engaged in violations of the federal

RICO statutes when the court ordered DeLine and Watts to do extra legal work in the

case so they could bill their clients and run the clock on discovery to prevent plaintiff

from obtaining evidence.

Judge Blackburn and Judge Hegarty are not being sued for their decisions but for

their criminal acts in violation of RICO, other statutes, and her constitutional rights.

They acted without jurisdiction where all jurisdiction was lost at the beginning of that

case.  They "engaged in fraud upon the court; failed to follow statutory procedures,

engaged in conduct that was unlawful, violated Plaintiff's right for due process failed to

provide notice of hearings, and failed to follow the rules."  (Docket No. 22 at 18).

As a result of the above, plaintiff "suffered loss to her family including, one

murdered son, another stolen son, a third son, four grandchildren as well as any

afterborn grandchildren."  (Docket No. 22 at 20).  She lost business, wages, credit,

property, restitution in several other civil actions, and bodily injury.  Plaintiff seeks the

following: $20 million in damages, interest, costs, entry into the witness protection

program since there has already been an attempt on her life, immediate criminal

charges be filed against Norman, Hudson, and any other party found to be involved in

the acts described in Civil Action No. 12-cv-01483-REB-MEH, a federal decree

annulling her common law marriage to Norman and to vacate the divorce decree, that

the permanent restraining order against her by Norman be vacated, and that all orders

and findings in Civil Action No. 12-cv-01483-REB-MEH be vacated and the case be

consolidated with this one.

Although it is not entirely clear, it appears that plaintiff alleges violations of RICO,

42 U.S.C. § 1983 by violating some of her constitutional rights, 42 U.S.C. § 1985(3),

and various federal criminal statutes.

**PENDING MOTIONS**

Now before the court for a report and recommendation are the following eight

motions:

**(1) Defendants Robert E. Blackburn and Michael E. Hegarty's Motion to
Dismiss Claims in Amended Complaint (Docket No. 31)** [Response - Docket No. 86;

Reply - Docket No. 98].  Defendants assert that the court lacks subject matter

jurisdiction over the claims against them because they are entitled to absolute judicial

immunity to the extent they are sued in their personal capacity, and there has been no

waiver of sovereign immunity to the extent they are sued in their official capacity.  In

addition, they contend that plaintiff has failed to state a claim against them upon which

relief can be granted.

**(2) City Defendants' Motion to Dismiss Plaintiff's Amended Complaint
Pursuant to Fed. R. Civ. P. 12(b)(1); and 12(b)(6) (Docket No. 32)** [Response -

Docket No. 85; Reply - Docket No. 99].  The "City Defendants" (defendant Lamphere,

Kern, Lambert, Whittington, CSPD, and CCS) seek dismissal on the following grounds.

Plaintiff's claims regarding the child custody matter occurring in July 2000 should be

dismissed as time barred and failure to state a claim.  Plaintiff's conclusory allegations

against Lamphere fail to state an actionable claim.  Plaintiff fails to allege a causal

connection between her alleged injury and Lamphere's conduct.  Plaintiff's claims

against Commander Whittington, Sgt. Kern, and Det. Lambert (the "City Police

12

Officers") and the CSPD fail to state an actionable claim.  CSPD is not a properly named party.  Plaintiff fails to allege any custom or policy which was the moving force behind any alleged constitutional violation.  Plaintiff's claims against the City Defendants are frivolous.

**(3) Motion to Dismiss of Defendant Ashland County Department of Human Services for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Improper Venue (Docket No. 54)** [Response - Docket No. 110; Reply - Docket No. 115].  ACDHS seeks dismissal on the following grounds.  Plaintiff has failed to plead adequately any jurisdictional basis for her claims.  Plaintiff has failed to demonstrate adequately diversity jurisdiction and federal question jurisdiction.  The court lacks personal jurisdiction over ACDHS.  Venue is improper.

**(4) Motion to Dismiss by Defendants Kimberly DeLine, Michael Watts, and Retherford, Mullen & Moore, LLC (Docket No. 56)** [Response - Docket No. 112; Reply - Docket No. 116].  Defendant attorneys DeLine and Watts and defendant Retherford, Mullen & Moore, LLC (collectively, "the Retherford firm") seek dismissal on the following grounds.  The Retherford firm is entitled to absolute immunity under the litigation privilege and owes no duty of care to plaintiff.  Plaintiff fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 and RICO.  Plaintiff's conclusory allegations do not meet the pleading requirements of Fed. R. Civ. P. 8 and 9(b).

**(5) Defendant Akron Children's Hospital's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (Docket No. 65)** [Supplement - Docket No. 73);

Response - Docket No. 111; Reply - Docket No. 118; Joinder by Medina General Hospital - Docket No. 119].  Akron Children's Hospital seeks dismissal on the following grounds.  It is not subject to personal jurisdiction in Colorado.  Venue is improper.  Plaintiff has failed to demonstrate the existence of diversity jurisdiction or of a federal question.

**(6) Motion to Dismiss by Lindsey Topper (Docket No. 90)** [Response - Docket No. 104; Reply - Docket No. 117].  Defendant Topper asserts the following grounds for dismissal.  Topper and the law firm of Lindsey S. Topper, P.C., are entitled to absolute immunity under the litigation privilege and owe no duty of care to plaintiff.  The Complaint fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983 and RICO.  Plaintiff's conclusory allegations do not meet the pleading requirements of Fed. R. Civ. P. 8 and 9(b).

**(7) Medina General Hospital's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(6) (Docket No. 97)** [Response - Docket No.106 ; Reply - Docket No. 114].  Medina General seeks dismissal on the following grounds.  This court lack personal jurisdiction over Medina General.  Venue is Improper.  Plaintiff's claims against Medina General are time barred because they accrued almost twenty years ago.

**(8) Plaintiff's Rule 65 Injunction for Ex Parte Orders (Docket No. 139)** [Response - Docket No. 142].  Plaintiff seeks removal of Judge Blackburn in Civil Action No. 12-cv-01483-REB-MEH.

The court has very carefully reviewed all of these motion papers as well as the

14

applicable Federal Rules of Civil Procedure and case law.  In addition, the court has

taken judicial notice of the court file in this case and in Civil Action No. 12-cv-01483-

REB-MEH.  The court now being fully informed makes the following findings,

conclusions of law, and recommendations.

Rule 12(b)(1) concerns whether the court has jurisdiction to hear the case before

it.  It:

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the
> subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction,
> federal courts may only adjudicate cases that the Constitution and
> Congress have granted them authority to hear.  *See* U.S. CONST. art. III,
> § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes
> conferring jurisdiction on federal courts are to be strictly construed.  *See F
> & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule
> 12(b)(1) motion to dismiss "must be determined from the allegations of
> fact in the complaint, without regard to mere conclusionary allegations of
> jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
> The burden of establishing subject matter jurisdiction is on the party
> asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d
> 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.
> First, if a party attacks the facial sufficiency of the complaint, the court
> must accept the allegations of the complaint as true.  *See Holt v. United
> States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks
> the factual assertions regarding subject matter jurisdiction through
> affidavits and other documents, the court may make its own findings of
> fact.  *See id.* at 1003.  A court's consideration of evidence outside the
> pleadings will not convert the the motion to dismiss to a motion for
> summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

Rule 12(b)(2) provides that a defendant may move to dismiss a complaint for lack

of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of

establishing personal jurisdiction over the defendants.  OMI Holdings, Inc. v. Royal Ins.

Co., 149 F.3d 1086, 1091 (10th Cir. 1998).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims

16

across the line from conceivable to plausible." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations omitted). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the Amended Complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Plaintiff is proceeding *pro se.* The court, therefore, reviews her pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro*

17

*se* complaint to less stringent standards than formal pleadings drafted by lawyers).

However, a *pro se* litigant's conclusory allegations without supporting factual averments

are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove

facts that have not been alleged or that a defendant has violated laws in ways that a

plaintiff has not alleged. See Associated Gen. Contractors of Cal., Inc. v. California

State Council of Carpenters, 459 U.S. 519, 526 (1983). See Whitney v. New Mexico,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's

behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court

may not "construct arguments or theories for the plaintiff in the absence of any

discussion of those issues"). "The plaintiff's *pro se* status does not entitle [her] to

application of different rules." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept.

1, 2010).

## CLAIMS AGAINST JUDGE BLACKBURN AND JUDGE HEGARTY

Defendants Blackburn and Hegarty correctly assert that dismissal of the claims

against them is appropriate pursuant to Fed. R. Civ. P. 12(b)(1).

A judge is absolutely immune from suit for acts taken within his judicial capacity.

Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000). To overcome absolute

judicial immunity, a plaintiff must demonstrate that a judge's actions were either outside

the judge's judicial capacity or were taken in the complete absence of all jurisdiction.

Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam). A judge acts in the clear

absence of all jurisdiction only when he "acts clearly without any colorable claim of

18

jurisdiction." Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990). "If judicial immunity

means anything, it means that a judge will not be deprived of immunity because the

action he took was in error . . . or was in excess of his authority." Mireles v. Waco, 502

U.S. at 288 (internal quotations omitted).

Here, even construing the plaintiff's allegations liberally, all of the plaintiff claims

against defendants Blackburn and Hegarty concern their actions taken exclusively in

their judicial capacity during the plaintiff's other civil case. None of the plaintiff's

allegations overcome the judges' absolute judicial immunity because they do not

demonstrate that Judge Blackburn and/or Judge Hegarty acted outside of their official

capacity or in the complete absence of jurisdiction. Plaintiff merely seems to disagree

with the judges' handling of the plaintiff's case, but the claims raised by the plaintiff here

do not overcome the absolute judicial immunity. "A judge is immune from liability for his

judicial acts even if his exercise of authority is flawed by the commission of grave

procedural errors." Moss v. Kopp, 559 F.3d 1155, 1163-64 (10th Cir. 2009) (internal

quotation marks omitted). "[A] judge does not act in the clear absence of all jurisdiction

even if the action he took was in error, was done maliciously, or was in excess of his

authority." Id. at 1163. Plaintiff seems to contend that the Judges conspired with the

other defendants, but judicial immunity is not overcome where a litigant alleges a judge

conspired with others. See Dennis v. Sparks, 449 U.S. 24, 27 (1980) (judicial immunity

not overcome even where a claimant alleges a judge conspired with others). Therefore,

plaintiff's claims against defendants Blackburn and Hegarty in their individual capacities

should be dismissed with prejudice.

With respect to the claims against Judge Blackburn and Judge Hegarty in their

official capacity, they are protected by sovereign immunity, a "concept [that] has long

been firmly established by the Supreme Court . . . ."  <u>Smith v. Krieger</u>, 643 F. Supp.2d

1274, 1280 (D. Colo. 2009), <u>aff'd</u>, 389 Fed. Appx. 789 (10th Cir. 2010), <u>cert. denied</u>, 131

S.Ct. 1511 (2011).  Plaintiff has not shown that there has been a specific waiver of

immunity in order to establish jurisdiction.

Based upon the findings above, it is recommended that plaintiff's claims against

defendants Blackburn and Hegarty be dismissed and that the plaintiff's Rule 65

Injunction for Ex Parte Orders (Docket No. 139), in which she seeks removal of Judge

Blackburn in Civil Action No. 12-cv-01483-REB-MEH, be denied.  The court takes

judicial notice of the fact that Final Judgment was entered in Civil Action No. 12-cv-

01483-REB-MEH on May 7, 2014 (Docket No. 313 in that action) (see note 1 <u>supra</u>).

## DIVERSITY JURISDICTION LACKING

In the Amended Complaint, plaintiff has a section entitled "DIVERSITY

DESCRIPTION" which states:

> I.  ELIZABETH WOJDACZ Plaintiff, is a citizen with her residence being in
> Colorado Springs, Colorado 80933.  She is the sole owner/oporater [sic] of
> Alexandria Construction, Inc. organized and existing under the laws of the
> state of Colorado.
>
> II.  The above case involves citizens and/or entities of differing state
> jurisdictions which include Ohio and Colorado.  Plaintiff continues to reside
> in Colorado.
>
> III.  The amount of controversy, exclusive if [sic] interests and costs, is
> twenty million dollars.

(Docket No. 22 at 4).  However, "[w]hen jurisdiction is premised on diversity of

citizenship under 28 U.S.C. § 1332(a) . . ., each plaintiff must be diverse from each

defendant to have what is known as complete diversity."  <u>Ravenswood Inv. Co., L.P. v.</u>

Avalon Correctional Servs., 651 F.3d 1219, 1223 (10th Cir. 2011).  See Owen

Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978) ("diversity jurisdiction

does not exist unless *each* defendant is a citizen of a different State from *each*

plaintiff").  Plaintiff's own "DIVERSITY DESCRIPTION" states that there is no such

complete diversity here because she states that she resides in Colorado, as do at least

one or more of the defendants.  Therefore, this court cannot exercise diversity

jurisdiction.

**RICO CLAIMS**

The Amended Complaint purports to allege RICO violations at least in part based

upon alleged conspiracies among the various defendants.  To establish a civil claim

under RICO, plaintiff must allege that defendants "(1) participated in the conduct (2) of

an enterprise (3) through a pattern (4) of racketeering activity."  BancOklahoma Mortg.

Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1100 (10th Cir. 1999).

"The term 'enterprise' is statutorily defined and includes 'any individual,

partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity.'"  Kriston v. Peroulis, 2010 WL

1268087, at *7 (D. Colo. Mar. 29, 2010) (quoting 18 U.S.C. § 1961(4)).  "In addition to

the enterprises specifically enumerated in the statute, an enterprise may be any union

or group of individuals associated in fact for a common purpose of engaging in a course

of conduct."  Id.  "The existence of such an association-in-fact- is proven by evidence of

an on-going organization, either formal or informal, under which the various associates

function as a continuing unit."  Id.  "[A]n association-in-fact "must have a structure with

three features: purpose, relationships among those associated with the enterprise, and

longevity." Id. (citing Boyle v. Untied States, 129 S. Ct. 2237, 2243 (2009)).  See

Johnson v. Myelin Productions, 2013 WL 4551888, at *3 (D. Colo. Aug. 28, 2013) ("[T]o

properly plead an enterprise a plaintiff must allege three components: (1) that there is

'an ongoing organization with a decision-making framework or mechanism for

controlling the group,' (2) 'that various associates function as a continuing unit,' and (3)

'that the enterprise exists separate and apart from the pattern or racketeering activity.'")

(quoting Kearney v. Dimanna, 195 Fed. App'x 717, 720 (10th Cir. 2006)).

       "'Pattern of racketeering activity' is a defined term and requires at least two acts

of 'racketeering activity.'"  Salinas v. United States, 522 U.S. 52, 62 (1997).  "Further,

'racketeering activity' is defined as any one of a variety of crimes 'which is chargeable

under State law and punishable by imprisonment for more than one year' or indictable

under 18 U.S.C. 201 or 29 U.S.C. § 186.  18 U.S.C. § 1961(1).  Any such acts must be

pled with the specificity required pursuant to Fed. R. Civ. P. 9."  Johnson v. Artemis,

2013 WL 3771311, at *4 (D. Colo. July 18, 2013).  "Pursuant to 18 U.S.C. § 1962(d), an

individual may be guilty of conspiracy under RICO without the two predicate acts

required pursuant to Sections 1962(b) and 1962(c), because 'conspiracy is a distinct

evil, dangerous to the public, and so punishable in itself."  Id. (internal quotations

omitted).

       Here, plaintiff fails to allege the existence of an "enterprise" separate and apart

from any alleged racketeering activity.  See id.  "Although [plaintiff] makes some

conclusory allegations that the defendants sometimes acted in conjunction with each

other, [she] does not allege that the defendants were involved in an association-in-fact

functioning as a continuing unit with a common purpose, with relationships among the

22

members, or with any type of longevity." Kriston v. Peroulis, 2010 WL 1268087, at *8.

Furthermore, plaintiff has failed to allege any acts that would constitute "racketeering

activity," let alone a "pattern" of such activity, or a threat of continuing criminal conduct.

Even if she did so, her allegations fall far short of the specificity required by Rule 9.

In addition, "any claim under § 1962(d) based on a conspiracy to violation the

provision of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive

claims are themselves deficient." Johnson v. Myelin Productions, 2013 WL 4551888, at

*4 (quoting Condict v. Condict 826 F.2d 923, 927 (10th Cir. 1987).  Inasmuch as

plaintiff's substantive claims are deficient, her conspiracy claims as apparently asserted

under § 1962(d) thus fail as a matter of law.  In any event, her allegations of a

conspiracy among the defendants are conclusory.  "A claim of conspiracy requires

plaintiff [to] demonstrate direct or circumstantial evidence of a meeting of the minds or

agreement of the defendants.  Conspiracy can be shown by a sequence of events from

which a reasonable jury could infer there was a meeting of the minds.  However,

conclusory allegations that defendants acted in concert or conspired without specific

factual allegations to support such assertions are insufficient." Johnson v. Artemis 2013

WL 3771311, at *4 (quoting Henson v. Bank of Am., 935 F. Supp.2d 1128, 1141 (D.

Colo. 2013)).  There are no facts alleged here that plausibly demonstrate that any of the

defendants were acting in concert.  Plaintiff's conspiracy allegations are based on no

more than supposition or surmise.

In sum, this court finds that the plaintiff's RICO claims are vague, based upon

mere labels and conclusions, fail to assert any particular acts sufficiently that would

indicate defendants were engaged in acts of racketeering, a pattern of racketeering, as

an enterprise, or as part of a conspiracy, and are far from plausible.  Therefore, it is

recommended that plaintiff's RICO claims be dismissed.

## CLAIMS OF VIOLATIONS OF CRIMINAL STATUTES.

In the Amended Complaint, plaintiff cites a myriad of criminal statutes that

various defendants allegedly violated.  "However, the criminal statutes do not provide

her with a private cause of action, and § 1983 does not allow her to pursue a violation of

federal criminal law."  Branthoover v. Burbach, 2010 WL 3341197, at *3 (D. Colo. Aug.

23, 2010) (citing Newcomb v. Ingle, 827 F.2d 675, 676 n.1 (10th Cir. 1987) (recognizing

that 18 U.S.C. § 241 is a criminal statute which does not provide for a private civil cause

of action); Winslow v. Romer, 759 F. Supp. 670, 673 (D. Colo. 1991) ("Private citizens

generally have no standing to institute federal criminal proceedings.")).  Therefore, to

the extent plaintiff seeks to state a claim against one or more of the defendants based

on the violation of a criminal statute or to the extent she seeks to assert jurisdiction

under any of those statutes, such claims and assertions are legally frivolous and should

be dismissed.

## CLAIMS PURSUANT TO 42 U.S.C. § 1985(3)

Plaintiff asserts in her Amended Complaint that she has standing to sue pursuant

to 42 U.S.C. § 1985(3).  That pleading, however, is void of any allegations of racial or

class-based discriminatory animus on the part of any defendant as is necessary to

support any claim against them under § 1985.  See Griffin v. Breckenridge, 403 U.S. 88,

102 (1971); Steinert v. Winn Group, Inc., 440 F.3d 1214, 1225 & n.13 (10th Cir. 2006);

Nelson v. Skehan, 2009 WL 4110210, at *2 (D. Colo. 2009) ("§ 1985(3) applies only to

conspiracies motivated by 'some racial or perhaps otherwise class-based, invidiously discriminatory animus.'").  Thus, the Amended Complaint fails to state a claim for relief under § 1985.

## CLAIMS OF CONSTITUTIONAL VIOLATIONS

It appears that the only claims remaining are claims of various constitutional violations that apparently are brought pursuant to 42 U.S.C. § 1983.

**Claims Against the Ohio Defendants.**  Medina General, Akron Children's Hospital, and ACDHS correctly assert that this court lacks personal jurisdiction over them.

When a defendant seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, plaintiff bears the burden of establishing personal jurisdiction over defendants.  OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998). If the court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  AST Sports Science, Inc. v. CLF Dist. Ltd., 514 F.3d 1054, 1056-57 (10th Cir. 2008).  In making this determination, all factual disputes should be construed in favor of the plaintiff.  Id. at 1057.

The Due Process Clause permits the exercise of personal jurisdiction over nonresident defendants when two conditions are met.  First, a defendant must have "minimum contacts" with the forum state.  International Shoe v. Washington, 326 U.S. 310, 316 (1945).  Second, if sufficient minimum contacts are shown, the Due Process Clause requires that the exercise of personal jurisdiction over the defendant would not

25

"offend traditional notions of fair play and substantial justice."  Impact Prods., Inc. v.

Impact Prods., LLC, 341 F. Supp.2d 1186, 1190 (D. Colo. 2004).

The "minimum contacts" standard may be met in two ways.  First, a court may,

consistent with due process, assert specific jurisdiction over a nonresident defendant "if

the defendant has purposefully directed his activities at residents of the forum, and the

litigation results from alleged injuries that arise out of or relate to those activities."

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotations omitted).

Where a court's exercise of jurisdiction does not directly arise from or relate to a

defendant's forum-related activities, the court may nonetheless maintain general

personal jurisdiction over the defendant based on the defendant's general business

contacts with the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

U.S. 408, 415-16 (1984).  However, to be subject to general jurisdiction in a forum state,

a defendant's affiliations with that state must be so continuous and systematic as to

render it essentially at home there.  Daimler AG v. Bauman, – U.S. –, 134 S.Ct. 746,

761 (2014).

In this case, the issue of personal jurisdiction over the Ohio defendants does not

warrant extensive discussion.  Both hospitals and ACDHS are located in Ohio.  Plaintiff

offers no factual allegations regarding their having engaged in any activities within or

directed at Colorado.  None of the alleged acts by the Ohio defendants occurred in

Colorado or had anything to do with anything or anyone in Colorado at the time.  In fact,

plaintiff was located in Ohio at the time of the alleged acts.  Accordingly, plaintiff's

allegations are insufficient for the exercise of either specific or general jurisdiction.

There is simply no plausible basis upon which these Ohio defendants can be subject to

personal jurisdiction in this court based upon the facts alleged in the Amended

Complaint.  They do not have the requisite minimum contacts with Colorado.  Assertion

of jurisdiction over these defendants would not be reasonable and fair.

The court notes that plaintiff has asserted RICO claims.  "The Tenth Circuit has

concluded pursuant to section 1965(b) of RICO, if a civil RICO action is brought in a

district court where personal jurisdiction can be established over at least one defendant,

and if required by the ends of justice, summonses can be served nationwide on other

defendants."  Kriston v. Peroulis, 2010 WL 1268087, at *6 (D. Colo. Mar. 29, 2010)

((Krieger, D.J.) (citing Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229-31 (10th Cir.

2006)).  "To determine whether nationwide jurisdiction is appropriate under RICO, the

Court engages in a three step analysis: (1) whether personal jurisdiction can be

established over one defendant; (2) whether the ends of justice require nationwide

service; and (3) whether the exercise of jurisdiction comports with due process." Id. at

*7.  However, as addressed in the text above, the Amended Complaint does not

adequately set forth a RICO claim.  Therefore, jurisdiction is not proper over the Ohio

defendants based on RICO, and the claims against them must be dismissed without

prejudice for lack of personal jurisdiction.  Id.

**Municipal-Entity Defendants.**  The constitutional claims against CCS and the

CSPD should also be dismissed.

First, these defendants correctly assert that the plaintiff's claims regarding the

child custody proceedings involving plaintiff's son Sean are barred by the two-year

statute of limitations for claims under § 1983.  See Mondragon v. Thompson, 519 F.3d

1078, 1082 (10th Cir. 2008).  In the Amended Complaint, plaintiff states that she "moved

27

to Colorado Springs in July 2000 with her youngest son Sean" and "[s]hortly after moving to Colorado Springs, Sean cooperated with CSPD officers to enable them to remove him from Plaintiff's custody . . . ." (Docket No. 22 at 8, ¶¶ 42, 43).  In addition, she asserts that Sean was placed into foster care from 2000 to 2001.  (Docket No. 22, at 15, ¶ 88).  Plaintiff contends that non-party CSPD Officer Grady conspired to cover up the child snatching of her son and that the CSPD, with other unidentified persons, conspired to "grab custody of Sean."  (Docket No. 22 at 14, ¶ 83, 84, 88).  Whatever claims plaintiff is attempting to raise with respect to the 2000 removal of Sean's custody, such claims are time-barred.  Plaintiff has not raised any basis for tolling the statute of limitations.

In addition, "[m]unicipalities and municipal entities are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff."  Nelson v. Skehan, 2009 WL 4110210, at *2 (D. Colo. Nov. 24, 2009) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)), appeal dismissed, 386 Fed. Appx. 783 (10th Cir. July 10, 2010), cert. denied, 131 S.Ct. 912 (2011).  "To establish liability, a plaintiff must show that a policy or custom exists and that there is a direct causal link between the policy or custom and the injury alleged."  Id.  Plaintiff here has failed to do so.  She asserts no policy or custom by the CCS.  With respect to the CSPD, plaintiff merely claims that it "established a practice and pattern where Plaintiff is refused any and all remedy through them respecting the filing of criminal charges where she is a victim of criminal acts and where her construction company was harmed as well" (Docket No. 22 at 14, ¶ 82), but such allegations do not allege a deprivation of a right secured by the Constitution or federal law.  Plaintiff has no constitutional right to have her allegations of

criminal activity by her ex-husband, Norman, or any other private citizen investigated by

the police or prosecuted.  See Nelson v. Skehan, 386 Fed. Appx. at 786 (citing Doyle v.

Oklahoma Bar Ass'n, 998 F.2d 1559, 1566-67 (10th Cir. 1993)).  A "private citizen lacks

a judicially cognizable interest in the prosecution or nonprosecution of another."  Doyle,

998 F.2d at 1566 (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)).   Plaintiff

also mentions various incidents regarding unidentified CSPD officers, but plaintiff cannot

state a claim for relief under § 1983 against the CSPD merely by pointing to isolated

incidents.  Nelson, 2009 WL 4110210, at *2.  Accordingly, the constitutional claims

against CCS and CSPD pursuant to § 1983 lack merit and should be dismissed.

**Attorneys/Law Firm.**   Defendants Lamphere, DeLines, Watts, Topper and

Rutherford, Mullen & Moore represented defendants in the plaintiff's other civil action,

and plaintiff's claims here arise out of such representation.  These defendants assert

they are entitled to absolute immunity for actions taken in the course of litigation under

the litigation privilege.  See Parsons v. Allstate Ins. Co., 165 P.3d 809, 817 (Colo. App.

2006); Merrick v. Burns, Wall, Smith & Mueller, P.C., 43 P.3d 712, 714 (Colo. App.

2001).  However, such privilege has not been extended to attorneys for any claims

asserted against them simply because they were acting as attorneys.  Instead, it

extends protection to attorneys facing claims based on allegedly defamatory

statements, something not asserted here.  See Roe v. McCollum, 2014 WL 717008, at

*7 (D. Colo. Feb. 25, 2014).

However, there are no plausible allegations in the Amended Complaint identifying

the private attorney defendants (Topper, DeLine, Watts, and Rutherford, Mullen &

Moore) as state actors, a necessary element of a § 1983 claim.  To state a claim under

29

§ 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "'[P]rivate conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is.'" Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009) (quoting Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995)). "The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983." Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005). "As . . . private citizen[s], [defendants] can be held liable under § 1983 only if [they were] a 'willful participant in joint action with the State or its agents.'" Id. at 1071. "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action. . . . " Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983). As found above, plaintiff's allegations here concerning a conspiracy among the defendants are conclusory. "There is no allegation that [they had] a direct interest in [the] lawsuit or . . . [were] acting in any capacity other than as . . . privately retained [counsel]." Beedle, 422 F.3d at 1073. Plaintiff's allegations are insufficient to state a § 1983 claims against these private defendants, and it is thus recommended that plaintiff's § 1983 claims against defendants Topper, DeLine, Watts, and Rutherford, Mullen & Moore be dismissed based on the ground that the Amended Complaint fails to allege the requisite

state action.

With regard to attorney Lamphere, who according to the Amended Complaint was an attorney for the CCS, the only specific factual allegation in that pleading that concerns him is the allegation that he, DeLine, and Watts did not contact plaintiff to permit her to participate in the formulation of the proposed Scheduling Order in the case before Judge Hegarty until after it was submitted to the court (Docket No. 22 at 9, ¶ 52). Plaintiff also makes a very nonspecific, general allegation that where Lamphere (and Watts and DeLine) "could have filed appropriate motions and received dismissals (or not) they rather, engaged in multiple filings, rescheduled matters several times, and in cooperation with Hegarty, did delay and prevent discovery in the case . . . ." (Docket No. 22 at 13, ¶ 76).   This court finds that such claims do not rise to the level of a constitutional violation and thus should be dismissed.

**Police Officers.**  The only claims remaining to be addressed are those against the individual CSPD police officers, Sgt. Joel Kern, Detective W. Lambert, and Lt. Scott Whittington.  Plaintiff's only specific factual allegations concerning these defendants are as follows.  Plaintiff met with Lambert, but after she provided him with a CD ROM containing information, he still refused to investigate plaintiff's claims of tax fraud, perjury, and other criminal acts allegedly performed by Norman and Hudson (Docket No. 22 at 13, ¶ 77).  Kern threatened to arrest plaintiff if she continued to try to meet with the police chief concerning the alleged criminal violations by Norman and Hudson and alleged police misconduct concerning "tampering with the evidence" (apparently tampering with the first copy of the CD ROM given to someone within the CSPD) (Docket No. 22 at 13, ¶¶ 77, 80).  Plaintiff met with Whittington to complain about

Lambert and Kern, but he never contacted plaintiff to advise her of the outcome. (Docket No. 22 at 14, ¶ 81).

As stated above, however, plaintiff has no constitutional right to have her allegations of criminal activity by her ex-husband, Norman, or any other private citizen investigated by the police or prosecuted.  See Nelson v. Skehan, 386 Fed. Appx. at 786.   Therefore, plaintiff has failed to state a claim with respect to her allegations regarding a failure to investigate and to follow up with her concerning her complaints about a failure to investigate.  Furthermore, plaintiff's claim that Kern threatened to arrest her does not rise to the level of a constitutional violation under the facts alleged; there was no actual seizure of the plaintiff.  Finally, plaintiff has provided only a conclusory claim of evidence "tampering" by an unidentified officer.

In sum, the plaintiff's § 1983 claims against the individual officers should be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Robert E. Blackburn and Michael E. Hegarty's Motion to Dismiss Claims in Amended Complaint (Docket No. 31) be **granted**.  It is further

**RECOMMENDED** City Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1); and 12(b)(6) (Docket No. 32) be **granted**.  It is further

**RECOMMENDED** Motion to Dismiss of Defendant Ashland County Department of Human Services for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and

32

Improper Venue (Docket No. 54) be **granted**.  It is further

**RECOMMENDED** Motion to Dismiss by Defendants Kimberly Deline, Michael

Watts, and Retherford, Mullen & Moore, LLC (Docket No. 56) be **granted**.  It is further

**RECOMMENDED** Defendant Akron Children's Hospital's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (Docket No. 65) be **granted**.  It is

further

**RECOMMENDED** Motion to Dismiss by Lindsey Topper (Docket No. 90) be

**granted**.  It is further

**RECOMMENDED** Medina General Hospital's Motion to Dismiss Pursuant to Fed.

R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(6) (Docket No. 97) be **granted**; and

**RECOMMENDED** Plaintiff's Rule 65 Injunction for Ex Parte Orders (Docket No.

139) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999);**

33

**Talley v. Hesse**, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated: August 5, 2014                    s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                      United States Magistrate Judge